UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                          Case No. 12-CR-42

ANTHONY JOSEPH BOLDIN,

        Defendant.

---

## DEFENDANT'S SENTENCING MEMORANDUM

---

Defendant Anthony J. Boldin has entered a plea of guilty to two counts, Willful False Statements to the Internal Revenue Service (Count One) and Access Device Fraud (Count Two). Pursuant to the agreement, the government intends to seek a sentence of two years imprisonment while the defense is free to argue for a lesser sentence. Boldin submits this Sentencing Memorandum to support his request that the court impose a sentence of probation with appropriate conditions.

### SENTENCING CONSIDERATIONS

As the Court is aware, in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that the Sentencing Guidelines are advisory, not mandatory, a determination that was further interpreted in *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007). *Booker* reinstated the district court's ability to craft a sentence within its discretion applying the factors set forth in 18 U.S.C.

§3553(a). Thus, a sentencing court has considerable discretion to individualize the sentence to the particular offender, as long as the court's reasoning is consistent with section 3553(a). *See Rita v. United States*, 551 U.S. 338 (2007).

Section 3553(a) provides, in relevant part:

> (a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed --
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Seventh Circuit has stated that two factors are critical post-*Booker*. First, the district court's choice of sentence must be adequately reasoned in light of section 3553(a) factors. Second, the sentence ultimately must be deemed a reasonable one. *United States v. Wallace*, 458 F.3d 606, 609-610 (7th Cir. 2006).

A sentence is reasonable if the sentencing court gives meaningful consideration to the sentencing factors enumerated in section 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is reasonable in light of the statutory factors

2

and the individual circumstances of the defendant. *See United States v. Wachowiak*, 496 F.3d 744, 749-51 (7th Cir. 2007); *see also Gall* (probation sentence appropriate even though Guidelines recommended prison) and *Kimbrough* (court's refusal to apply mandatory crack cocaine sentence appropriate and imposition of lesser prison sentence appropriate). Moreover, a sentencing judge is not required, or permitted, to presume that a sentence within the Guidelines range is the correct sentence, or the presumptive sentence. As the *Wachowiak* court stated in analyzing *Rita*, the "applicable guideline nudges [the sentencing judge] toward the sentencing range . . . his freedom to impose a reasonable sentence outside the range is ***unfettered***." 496 F.3d at 749. (emphasis added).

Downward departures based on family circumstances have been affirmed in order to avoid destruction of the family where the defendant's parental responsibilities were extraordinary. U.S.S.G. § 6.03 [G] [5]

### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of charges against Boldin are adequately set out in the Pretrial Sentence Report and will not be reiterated here. Boldin does not deny these allegations. He notes, however, that several mitigating factors are relevant to this Court's consideration of the nature and circumstances of these offenses.

After graduation from Marquette University and a period of employment with General Motors as a design engineer, it was Boldin's entrepreneurial spirit that drove him to venture into his desire for self-employment. Unfortunately, his real estate business founded in 1999 did not prosper as planned, and as a result, Boldin found

3

himself with substantial debt and liabilities. Due to the debts arising from the failed real estate business, Boldin was unable to financially support his online computer software sales business and transferred the ownership of the company to his father and brother, which was then reformed as RAM Software. Boldin managed and ran this business. Boldin and his wife Jodie could not escape their personal debt, brought about by the failed real estate business, and in 2000 filed for joint bankruptcy. Relying on the advice of his financial and legal consultants, Boldin embarked on other business ventures, as well as his continued involvement with online computer software sales. In 2006, after consultation with his business attorneys and accountants, Boldin and his wife invested in a horse breeding limited partnership, Lexington Ventures. Boldin soon learned the business was a scheme to defraud investors and the government. Along with his loss of his investment, huge tax liabilities were incurred.

Boldin was instrumental is designing and developing a touch screen voting machine that was marketed to three states for use in their elections. Boldin received no salary or profit from Voting Technologies International (VTI) but invested heavily in its development. The business failed when one state cancelled its executed contract with the company. Boldin had personally guaranteed this company, and as such, assumed significantly liabilities when the company failed

B.  **HISTORY AND CHARACTERISTICS OF BOLDIN**

Boldin has no prior record. He is a life long resident of the Milwaukee area who, despite humble beginnings, has successfully built two separate businesses, RAM Software LLC and RAM Distribution LLC, (d/b/a Atomic Park). Boldin's personal

4

background and family history are accurately set forth in the PSR and will not be reiterated here.

Boldin developed a very successful company in RAM/Atomic Park. After rapid growth in the early 2000's, RAM/Atomic Park was honored by the *Milwaukee Metropolitan Association of Commerce* as a *Future Fifty* company in 2002, 2003 and 2005. They were also honored in 2005 by receiving the *Mid-Market Growth Award* from the *Milwaukee Business Journal* for their outstanding achievement in increasing revenue growth. The accolade that Anthony is most proud of is the winning a *"Best Places to Work Award"*, one of just 25 companies (large and small) in the entire Metro Milwaukee area that wins that award each year.

Boldin's self-made success was a testament to his strong family background and family history of perseverance and work ethic. He has a proven track record of developing a successful business that provides economic growth to the community. As noted by Boldin's character references and statements provided in the PSR, Boldin's commitment to the care and well-being of his two sons is of paramount importance in his life. He is actively engaged in all activities of their lives, and is the primary parent in their lives.

### C. ACCEPTANCE OF RESPONSIBILITY/COOPERATION WITH INVESTIGATION

Boldin has accepted responsibility for his actions from the outset. When initially asked by his employees, he readily admitted committing the access fraud as an attempt to keep the company viable through the shortfall created by VTI's demise. Shortly

5

thereafter, he cooperated with the freezing of Ram's bank accounts and the seizure of funds far beyond any fraudulent amount by Metavante. Once he obtained counsel for this investigation, he instructed his counsel to waive his attorney client privilege and provide the Government with all legal and financial documentation that was requested. Specifically, Bolding directly provided all legal and tax data from several law firms and the accounting firm of BDO Seidman. Finally, Boldin waived his right against self-incrimination and met with DOJ and IRS representatives to freely answer questions about his conduct, business operation and personal financial history. While he is deeply ashamed of his misconduct, he has been forthright in accepting responsibility both in court and the community.

### D. FAMILY AND COMMUNITY INVOLVMENT

The most important thing in Boldin's life is the welfare of his sons Trent and Pierce. As demonstrated in the PSR and the letters of support from the administration of St. John Vianney School, He is a dedicated parent who is totally committed to the social, academic and extracurricular development of his sons' lives. While Boldin and his ex-wife have joint custody of Trent and Pierce, Jodie Boldin has chosen to exercise visitation less than 10% of her entitled time under the Marital Settlement agreement. According to Assistant Principal Jill Fischer, Boldin is a "Super Dad" who volunteers to assist the school more than any other parent.

In addition to school related activities, Boldin and his sons have volunteered with the St. Benedict's meal program and a number of MDA fundraising activities. As president and director of the Boldin Family Foundation, he has continued to direct

charitable gifts to Hope House of Milwaukee as well as a number of specialized groups supporting activities for children and the arts.

Sadly, Boldin's ex-wife Jodie has seized upon the event of his sentencing as an opportunity to strike back at her ex-husband. None of her allegations are based on fact or supported by the scrutiny of a multiyear government investigation. When RAM/Atomic Park became successful, Jodie Boldin assumed a dream lifestyle in which she could drive a Porsche Boxster and spend hundreds of thousands of dollars annually on jewelry, accessories, clothing, spa treatments and plastic surgeries. Financial records long ago provided to the government verify her expenditures. Throughout the successful Ram years, Ms. Boldin reviewed and signed all tax returns and actively participated in the ill-fated Lexington Ventures limited partnership. The demise of RAM/Atomic Park and the financial fallout therefrom, has understandably been emotionally traumatic for Ms. Boldin. Unfortunately, her response has been to falsely attack her ex-husband and distance herself from her sons. While Anthony Boldin deeply regrets his misconduct and the failure of his marriage, he recognizes that, more than ever, his children's interests have to come first.

E. **CONCLUSION**

For the reasons stated above, Boldin respectfully requests the Court consider a sentence of probation with appropriate conditions. The reasons are as follows:

1. Boldin has already suffered greatly for his misconduct. He is financially ruined and has lost his companies and his marriage. Despite a wildly successful and

promising early career, he realizes that he has likely forever lost the ability to direct and head a developing company due to these convictions and the financial implications flowing there from.

2. Despite the setbacks of the last six years, he has continued his involvement in educational and charitable endeavors throughout the Milwaukee community. In so doing, he has openly discussed and explained his misconduct to family, friends, neighbors, school officials and business colleagues in the community. By doing so, he has remained viable in volunteer organizations and education programs in addition to mentoring young business developers.

3. Boldin is a near 100% primary parent and parental influence for his sons. It is well established that he is the key integral component in their successful development, both as students and young men. His absence from their life at this time of their development would be particularly disruptive.

It is respectfully submitted that the community would be better served by Boldin actively providing service and the unique education he can provide given his rise and fall as a prominent entrepreneur. He has dealt with the professional devastation of his conduct in an admirable manner and, if given the opportunity, will continue to be a positive force in the Greater Milwaukee Community.

If it is the Court's determination that a more punitive sanction of incarceration is warranted, Boldin urges the Court to consider the imposition of home confinement or locally based work release incarceration. Boldin's demonstrated remorse, and his five year track record of positively rebounding from his unlawful conduct and his extraordinary family circumstances are appropriate considerations to allow his sentence to be served in this community.

8

Case 2:12-cr-00042-LA   Filed 06/05/12   Page 8 of 9   Document 15

Dated this 5th day of June, 2012.

                                                 Respectfully submitted,

                                                 GIMBEL, REILLY, GUERIN & BROWN LLP

                                                 By: <u>s/Patrick J. Knight</u>
                                                       PATRICK J. KNIGHT
                                                       State Bar No. 1003374
                                                       pknight@grgblaw.com
                                                       Attorneys for Defendant Anthony J. Boldin

POST OFFICE ADDRESS:

Two Plaza East, Suite 1170
330 East Kilbourn Avenue
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440